UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 15-cr-0014-GFVT-01 |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| JAMES W. HARRISON, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

After Defendant James Harrison pleaded guilty to conspiracy to distribute methamphetamines, the United States sought a forfeiture judgment for the value of property used in Mr. Harrison's conspiracy. First, the United States moved for a judgment of $250,000, but at a forfeiture hearing, reduced that amount to $146,320. The Government calculated this figure by claiming the PSR supported this amount. [Tr. 3 at ¶6–9.] For the reasons that follow, the Court concludes that the Record supports forfeiture in the amount of $66,930.00.

**I**

On September 27, 2016, Mr. Harrison entered a guilty plea to conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 846. [R. 359; R. 360.] The United States then sought a money judgment of $250,000 for the value of property that constituted or was derived from the proceeds Mr. Harrison obtained as a result of drug violations and any property used, or intended to be used, to commit or facilitate the commission of drug violations. [R. 368.]

The Court denied the Government's motion because Mr. Harrison's plea agreement did not contain a forfeiture clause. [R. 372.]

In his plea agreement, Mr. Harrison admitted that on or around October of 2014, he began obtaining methamphetamine from a supply in Georgia. [R. 359 at 2.] He made multiple trips to Georgia, bringing back methamphetamine to Kentucky where he distributed it. *Id.* Mr. Harrison admitted to conspiring with others to distribute at least 500 grams of methamphetamine. *Id.*

In Mr. Harrison's presentence report, probation officers determined that Mr. Harrison conspired to distribute between 500 grams and 1.5 kilograms of a mixture or substance containing methamphetamine. [R. 400 at ¶7.] The PSR then recounted the following facts. Mr. Harrison was arrested on December 1, 2014, at which point he was found in possession of approximately 6 ounces (170.1 grams) of methamphetamine. *Id.* at 5. He recalled purchasing 4 ounces (113.4 grams) of methamphetamine on his first trip to Georgia, 6 to 8 ounces (170.1 to 226.8 grams) of methamphetamine on his second trip, and 7 ounces (198.45 grams) of methamphetamine on his third trip. *Id.* at ¶13–15. The 6 ounces found on Mr. Harrison upon arrest was the remains of the third trip to Georgia. *Id.* at ¶15. When interviewed by detectives, Johnathan Martin alleged he accompanied Mr. Harrison on two trips to purchase methamphetamines; the first trip Mr. Harrison purchased 0.5 to 1 ounce (17.175 to 28.35 grams) and 2 to 3 ounces (56.7 to 85.05 grams) on the second trip. *Id*. at ¶ 21. Co-Defendant Samuel Jones was also arrested on December 1, 2014, and admitted to purchasing 3.75 grams (0.13 ounces) of methamphetamine from Mr. Harrison. *Id.* at ¶24. Co-Defendant Lisa Nicole Harrison indicated that Mr. Harrison would provide her 1 to 3 ounces (28.35 to 85.05 grams) for

distribution each time he returned from Georgia, and she remembered receiving 4 ounces (113.4 grams) from his last trip. *Id.* at ¶31–32. Given that Mr. Harrison admits to three trips to Georgia, this means 6 to 10 ounces (170.1 to 283.5 grams) can be attributed to him from Ms. Harrison. *Id.* ¶13–15. Finally, co-defendant Billy Smith estimated purchasing a total of 13.5 grams (0.48 ounces) from Mr. Harrison. *Id.* at ¶33. Based on the PSR, between about 26.11 to 33.61 ounces, or 743.175 to 952.8 grams,[1] of methamphetamine can be attributed to Mr. Harrison. He did not object to any of these numbers in the PSR, but denied selling or giving any drugs to his daughter, Lisa Harrison. *Id.* at 35. Subtracting these objections from the range, the portions of the PSR without objections support attributing 20.11 to 23.61 ounces, or 573.075 to 669.3 grams[2] to Mr. Harrison. The Government claimed that the PSR supported 1,463.25 grams of methamphetamine to attribute to Mr. Harrison. [Tr. 4 at ¶10–11.] However, the Court finds that the PSR at most only attributes 952.8 grams to Mr. Harrison, and given that Ms. Lisa Harrison received the same methamphetamine that Mr. Harrison purchased in

---

[1] On the low end: 113.4 grams (purchased on first trip to Georgia) + 170.1 grams (purchased on second trip to Georgia) + 198.45 grams (purchased on his third trip to Georgia) + 17.175 grams (Johnathon Martin, first trip) + 56.7 grams (Johnathon Martin, second trip) + 3.75 grams (Samuel Jones) + 28.35 grams (Lisa Nicole Harrison, first trip) + 28.35 grams (Lisa Nicole Harrison, second trip) + 113.4 grams (Lisa Nicole Harrison, third trip) + 13.5 grams (Billy Smith) = 743.175 grams

On the high end: 113.4 grams (purchased on first trip to Georgia) + 226.8 grams (purchased on second trip to Georgia) + 198.45 grams (purchased on his third trip to Georgia) + 28.35 grams (Johnathon Martin, first trip) + 85.05 grams (Johnathon Martin, second trip) + 3.75 grams (Samuel Jones) + 85.05 grams (Lisa Nicole Harrison, first trip) + 85.05 grams (Lisa Nicole Harrison, second trip) + 113.4 grams (Lisa Nicole Harrison, third trip) + 13.5 grams (Billy Smith) = 952.8 grams

[2] Also of note, Ms. Lisa Harrison's amounts are from each trip to Georgia, which would logically be included in the amounts he purchased from Georgia. On the low end, 28.35 grams (Lisa Nicole Harrison, first trip) + 28.35 grams (Lisa Nicole Harrison, second trip) + 113.4 grams (Lisa Nicole Harrison, third trip) = 170.1 grams to be subtracted. On the high end, 85.05 grams (Lisa Nicole Harrison, first trip) + 85.05 grams (Lisa Nicole Harrison, second trip) + 113.4 grams (Lisa Nicole Harrison, third trip) = 283.5 grams to be subtracted.

Georgia, the PSR more likely can only attribute up to 669.3 grams of methamphetamine to Mr. Harrison.

At a forfeiture hearing on November 15, 2017, the Court heard testimony from Mr. Brad Mitchell, an agent for DEA. Mr. Mitchell testified that he could attribute 2,423.88 grams of methamphetamine to Mr. Harrison. [Tr. 10 at ¶7–19.] Based on his interview with Mr. Harrison, Mr. Mitchell attributed 21 ounces (595.34 grams) of meth purchased and distributed including 7 ounces (198.45 grams) found on Mr. Harrison at arrest. [Tr. 9 at ¶8–12.] Following Mr. Harrison's arrest, 7.5 ounces (212.62 grams) were seized from Joe Maggard, who stated he received it from Mr. Harrison. [Tr. 9 at ¶13–16.] On March 5, 2015, agents seized 12.5 ounces (354.37 grams) from Lisa Nicole Harrison, who claimed she received it from her father, Mr. Harrison, plus an additional 12 ounces (340.2 grams) that he provided to her prior to the investigation. [Tr. 9 at ¶17–20, ¶24–25.] Additionally, Mr. Mitchell testified that Samuel Jones's statement on December 1, 2014, attributed 8 ounces (226.8 grams) to Mr. Harrison [Tr. 9 at ¶20–21], and Billy Smith's statement attributed 16.5 ounces (467.8 grams) of methamphetamine to Mr. Harrison [Tr. 9 at ¶22–23]. Finally, a statement from Jimmy Barrett yielded one ounce (28.35 grams) of methamphetamine attributable to Mr. Harrison. [Tr. 10 at ¶1–2.] Mr. Mitchell also testified that one gram of methamphetamine sells for approximately $100, according to controlled buys performed by the DEA. [Tr. 10 at ¶3–13.] After this exchange, Mr. Michell claimed he could account for $242,300 of methamphetamine to attribute to Mr. Harrison (or, at $100 per gram, approximately 2,423 grams). [Tr. 10 at

¶18–19.] However, based on these numbers, the court only calculates this amount to be 2,225.48 grams (approximately 78.5 ounces).[3]

Thus, the Government claims the 2,423.88 grams of methamphetamine attributed to Mr. Harrison could result in a judgment of around $242,300. [Tr. 20 at ¶18–22.] Instead, the Government asks for a judgment of $146,320, based on the amount supported by the PSR. [Tr. 20 at ¶5–10.] The Government also admits they only seized around 728 grams that could be attributed to Mr. Harrison [Tr. 19 at ¶ 13–14], but claims enough evidence exists to attribute a much greater amount [Tr. 20 at ¶5–10].

## II

### A

When the Government seeks forfeiture of property in a criminal proceeding, Federal Rule of Criminal Procedure 32.2 provides that "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(a)(1)(A); *United States v. Jones*, 502 F.3d 388, 391-92 (6th Cir. 2007). Such property subject to forfeiture includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" or "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853. "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R.

---

[3] 595.34 grams (based on interview of Mr. Harrison) + 212.62 grams (Joe Maggard) + 354.37 grams (Lisa Nicole Harrison) + 340.2 grams (Lisa Nicole Harrison) + 226.8 grams (Samuel Jones) + 467.8 grams (Billy Smith) + 28.35 grams (Jimmy Barrett) = 2,225.48 grams

5

Crim. P. 32.2 (b)(1)(B).  The Government must prove that a sufficient nexus existed between the property intended to be seized and the offense "by a preponderance of the evidence."  *Jones,* 502 F.3d at 392 (*citing United States v. Hall*, 411 F.3d 651, 654-55 (6th Cir. 2005)).

**B**

The Government has presented evidence sufficient to establish the "requisite nexus" between the money demanded and the present offense, as Mr. Harrison entered a guilty plea to conspiracy to distribute illegal substances.   The only issue here is exactly how much methamphetamine can be traced back to Mr. Harrison's distribution.  Based on the Court's calculations, the PSR supports up to 669.3 grams that were not objected to by Mr. Harrison.[4]  This means that a forfeiture of approximately $66,930.  The Government provided testimony to support up to 2,225.48 grams, but Mr. Harrison's plea agreement stated his relevant conduct supported attributing between 500 grams and 1,500 grams of methamphetamine, not 2,225 grams.  [R. 359 at 2.]  Therefore, the Court finds that the Government has submitted sufficient evidence to support a forfeiture for the value of the methamphetamine attributed in the PSR to Mr. Harrison.  However, while the Government clams the PSR supports a forfeiture of $146,320 (at $100 per gram, this is around 1,463 grams), within the 500–1,500 gram range, the Court has only found evidence to support approximately 669.3 grams.  At $100 per gram, this amounts to a forfeiture of $66,930.

---

[4] Mr. Harrison pleaded guilty to conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine. [R. 359.] In his PSR, the Base Offense Level was determined to be 30, for an offense involving at least 500 grams but less than 1.5 kilograms under United States Sentencing Guidelines § 2D1.1(c)(5). This Court found that the PSR correctly calculated the Guidelines Range, including the Base Offense Level, had been correctly calculated. [R. 394.] Accordingly, because this determination that Mr. Harrison is responsible for 669.3 grams is at least 500 grams but less than 1.5 kilograms, this determination has no impact on Mr. Harrison's sentence.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED ADJUDGED,** and **DECREED**, $66,930 is subject to forfeiture and the defendant's interest in the property is forfeited to the United States of America and no right, title or interest in the property shall exist in any other party.

This the 6th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge